UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES,

          Plaintiff,                          No. 12-CR-20287

v                                       HON. MARK A. GOLDSMITH

D-8 LEON GILLS,

          Defendant.

_____/

**OPINION & ORDER**
**DENYING DEFENDANT'S MOTION TO VACATE HIS SENTENCE (Dkt. 979)**

This matter is before the Court on Defendant Leon Gill's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (Dkt. 979). For the reasons that follow, the Court denies Gills's motion.[1]

**I. BACKGROUND**

Based on his often violent involvement with a gang that sold illegal substances, Gills was charged with (i) conspiracy to violate the Racketeering Influenced and Corrupt Organization Act, 18 U.S.C. § 1962 (RICO); two counts of attempted murder in aid of racketeering, 18 U.S.C. § 1959(a); and two counts of use and discharge of a firearm during and in relation to a crime of violence, 18 U.S.C. 924(c). Am. 1st Superseding Indictment (Dkt. 191).

In a jury trial presided over by the undersigned, testimony reflected that Gills was a member of a gang based in the Howard Estates, a public housing project on the south side of Flint, Michigan. See, e.g., 6/11/14 Trial Tr. at 31–40, 64–66 (Dkt. 853). The gang went by various

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to Gills's motion, briefing includes the Government's response (Dkt. 991), Gills's reply (Dkt. 1006), Gills's supplement to his reply (Dkt. 1035), Gills's second supplement to his reply (Dkt. 1035), and Gills's addendum to his motion (Dkt. 1097).

names, including the "Howard Boys" and "Murda Ville." 6/3/14 Trial Tr. at 145 (Dkt. 849). This gang controlled the drug trade in and around the Howard Estates, and Gills sold substances including crack cocaine. 6/11/14 Trial Tr. at 126–129.

Testimony demonstrated that Gills had been actively involved in multiple shootings. See 6/6/14 Trial Tr. at 55–57 (Dkt. 850) (reflecting that Gills had opened fire at a rival gang-member driving away in a car, who was shot but survived); 6/26/14 Trial Tr at 127–128 (Dkt. 864) (reflecting that Gills fired shots into a van of individuals associated with a former gang member with whom Gills had a personal conflict); 7/2/14 Trial Tr. at 40 (Dkt. 870) (reflecting that Gills directed two other gang members to "[l]ay law down" on a crack dealer, whom the gang members subsequently shot and killed); id. at 90–92 (reflecting that Gills was driving while his co-conspirator shot and hit a former gang-member). Additionally, while incarcerated, Gills threatened multiple Government cooperators and members of their families to intimidate them into refusing to testify. See, e.g., 7/9/22 Trial Tr. at 169, 172–177 (Dkt. 874).

The jury returned guilty verdicts against Gills for all counts charged, except that they acquitted Gills of one count of use of a firearm during a crime of violence. Verdict (Dkt. 712). The Court sentenced Gills to life imprisonment on the RICO conspiracy count, 120 months on the two counts of attempted murder in aid of racketeering, and 120 months on the use of a firearm during a crime of violence, which was imposed consecutively to all other counts. Judgment (Dkt. 801). Gills appealed, and the United States Court of Appeals for the Sixth Circuit affirmed. United States v. Gills, 702 F. App'x 367, 385 (6th Cir. 2017), as amended (Nov. 6, 2017).

Gills now moves to vacate or set aside his sentence under § 2255.

## II. ANALYSIS[2]

Gills asserts ten claims in total: eights claims for ineffective assistance of counsel (Claims 1–6, 8–9);[3] one claim that one of his charged offenses was not supported by proof beyond a reasonable doubt, which overlaps with an ineffective assistance of counsel claim (Claim 7); and one claim that his conviction under 18 U.S.C. 924(c) must be vacated because that statute is unconstitutionally vague (Claim 10). See Def. Mot. He also requests an evidentiary hearing. Id. The Court addresses each claim and request in turn, and it finds that none have merit.

### A. Claim 1: Ineffective Assistance of Trial Counsel for Concession of Gills's Guilt During Opening Statement

Gills argues that his trial counsel was unconstitutionally ineffective because he conceded Gills's guilt to his charged crimes. Def. Mot. at 1. Gills asserts that he and his attorney Glenn

---

[2] To prevail on a § 2255 motion, "a petitioner must demonstrate the existence of an error of constitutional magnitude which has a substantial and injurious effect or influence on the guilty plea or the jury's verdict." Humphress v. United States, 398 F.3d 855, 858 (6th Cir. 2005) (punctuation modified, citation omitted). Non-constitutional errors "ordinarily are not cognizable on collateral review," United States v. Cofield, 233 F.3d 405, 407 (6th Cir. 2000) (punctuation modified, citation omitted), but a movant can prevail on allegations of non-constitutional error by establishing "a fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process," Watson v. United States, 165 F.3d 486, 488 (6th Cir. 1999) (punctuation modified, citations omitted).

[3] A defendant must establish two points to "demonstrate that a counsel's performance was so defective as to require reversal of a conviction: first, the defendant must show that counsel's performance was deficient[,] and second, the defendant must show that the deficient performance prejudiced the defense." Lint v. Preselnik, 542 F. App'x 472, 475 (6th Cir. 2013) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)) (punctuation modified).

To establish deficient performance, a defendant must show that "counsel's representation fell below the objective standard of reasonableness." Id. (punctuation modified). On this first element, "[j]udicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689 (punctuation modified). To succeed on the second step, "a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Lint, 542 F. App'x at 476 (citation omitted, punctuation modified).

Simmington agreed that they would "pursue a defense to generally put the government's case to its burden of proof." Id. In violation of this understanding, Simmington allegedly conceded Gills's guilt during opening statements in three ways. Id. at 1–3.

Gills points first to Simmington's description of Gill as a "tag along" to his older brother and cousin, who had criminal backgrounds. Id. at 1. Simmington stated: "He also was out on the streets, places he shouldn't have been, trying to keep up with the big boys, trying to make himself look tough." 6/3/14 Trial Tr. at 23 (Dkt. 849). Gills asserts that this "characterization of Petitioner's quest to establish an infamous reputation surely implied that he was intimately involved in criminal activity." Def. Mot. at 1.

Gills next refers to Simmington's description of Gills's interest in rap music, as Simmington stated: "[I]f you try to make your name in gangster rap and it doesn't appear that you have one foot in the life you're singing about, you've got no cred, you got no cred at all." 6/3/14 Trial Tr. at 23. In Gills's view, Simmington thus "bootstrapped Petitioner's motive for his illicit-street life to his goal to bolster and promote his credibility as an artist of Gangster Rap." Def. Mot. at 1.

Lastly, Gills cites the following statement from Simmington: "[A]long the way he got involved with some people he shouldn't have been or continued to try to pursue his brother and his cousin, he did some things that he shouldn't have done . . . ." 6/3/14 Trial Tr. at 28. Gills asserts that Simmington thus "indicat[ed]" a "connection" or "nexus" between Gills's behavior and the offenses charged in the indictment, as Gills believes that Simmington then "went on to provide a dirty laundry list of crimes, and alarmingly those which are charged in the indictment." Mot. at 2. Gills here refers to certain actions allegedly taken by Gills that Simmington said were supported by "evidence" which the jury "may find . . . compelling." 6/3/14 Trial Tr. at 28. Specifically, Simmington referred to the possibility that Gills "shot at Dartanion Edwards along with two other people," that Gills "had an ongoing gun battle or gun exchange with a fellow by

the name of Brandon Marshall," and that Gills was present for and later held the weapon used during the shooting of Charles Orr.  Id. at 29.  Simmington concluded: "I think I can predict that you will not find that any one of these incidents was motivated by a desire on the part of Leon Gills to further the operation of some drug distribution ring or that they were motivated by the desire to do the same thing for a RICO racketeering conspiracy.  That's what the government has claimed."  Id.

Gills asserts that he should be granted a new trial based on McCoy v. Louisiana, 138 S. Ct. 1500, 1512 (2018).  See Def. Mot. at 3–4.  McCoy found that a new trial was required where defense counsel committed the structural error of conceding that his client had committed three murders in the hope of avoiding the death penalty, over the defendant's objections.  138 S. Ct. at 1506–1512.  Gills argues this his case is comparable, noting that he and his counsel "had two sharp disputes over the matter in which Petitioner advised Attorney Simmington that it was wrong for him to change the defense plan without consultation with him for his approval first."  Def. Mot. at 4.

The Government does not interpret Simmington's statements as concessions of Gills's guilt.  Gov't Resp. at 15.  In the Government's view, Simmington denied that Gills had the requisite motive to be found guilty of the charged racketeering charges.  Id.  The Government asserts that Gills's motion admits that he agreed with his counsel's strategy: "to put the [G]overnment to its burden of proof."  Id. (citing Mot. at 1); see also id. at 17.  The Government argues that McCoy is distinguishable not only because Simmington never conceded Gills's guilt, but also because "Gills never insisted that he did not engage in the charged acts, nor did he object to any alleged admissions of guilt by his counsel."  Id. at 18.

The Court agrees with the Government.  To convict Gills on the RICO conspiracy and murder in aid of racketeering charges, respectively, the Government was required to show that (i) Gills and at least one co-conspirator agreed to engage in a pattern of racketeering, see 18 U.S.C. §

1962; 7/17/14 Trial Tr. at 18–19 (Dkt. 879) (providing jury instructions); and (ii) Gills attempted

to commit murder to earn consideration from or improve his position within a racketeering

enterprise, see 18 U.S.C. § 1959(a); Trial Tr. at 24–26.  The statements identified by Gills do not

"concede" that Gills acted with this motive; rather, they challenge the Government's position that

any of Gills's alleged actions were attributable to an intent to further the racketeering enterprise.

Simmington's characterization of Gills as someone who acted tough to bolster his reputation both

in his own community and in the rap industry contradicts the Government's claim that Gills

committed violence in willful aid of a racketeering conspiracy.   Further, confronted with

substantial evidence that Gills had been involved in multiple shootings, Simmington emphasized

that—even if the jury found that Gills were implicated in those acts—the Government could not

prove that Gills was "motivated by a desire" to conspire in or aid a pattern of racketeering activity.

6/3/14 Trial Tr. at 29.

This advocacy on behalf of his client was in no way comparable to the actions of trial

counsel in McCoy, who—despite the defendant's verbal protestations—stated during opening

statements that the evidence was "unambiguous" that his "client committed three murders," and

stated during the penalty phase that the defendant "committed these crimes."  138 S. Ct. at 1507

(punctuation modified).   Simmington made no such concessions; rather, he contextualized

potential soft spots in his client's case by arguing that the Government could not meet its burden

of proof.   Gills cannot overcome the presumption that this approach constitutes "sound trial

strategy."   Strickland, 466 U.S. at 689 (punctuation modified).  His first claim for ineffective

assistance of counsel thus fails.

## B. Claim 2: Ineffective Assistance of Trial Counsel for Failure to Challenge Defective Jury Instructions

Gills asserts that the Court's instruction on the RICO conspiracy charge was "defectively

given."   Def. Mot. at 7.  As Gills observed, when delivering this instruction, the Court first

identified the five elements of the charged crime, the last of which was that "the activities of the Howard Boys enterprise affected interstate commerce." 7/17/14 Trial Tr. at 18–19. The Court then provided definitions and explanations for terms relevant to each element, in order, ending with a description of the interstate commerce element. See id. at 19–31. In Gills's view, the Court "shifted gears," "changed direction," and "incoherently bounc[ed] randomly around" when discussing these elements. Def. Mot. at 6. In support of this characterization, Gills refers to the Court's discussion of the fourth element: whether there was an agreement with a coconspirator to engage in a pattern of racketeering. Id. Gills argues that the Court moved on from this topic to discuss "different types of possession in regard to controlled substances," and then "[r]eturn[ed]" to the fourth element to add a point that it had "inadvertently omitted": a discussion of the "agreement aspect." Id. Gills finds this presentation confusing.

In fact, a review of the trial transcript makes clear that the sections of the jury instruction identified by Gills exclusively concern the fourth element. 7/17/14 Trial Tr. at 22–30. The Court's explanation regarding possession was not a "detour[]," Def. Mot. at 6; rather, possession was relevant to the charged offense of racketeering with intent to distribute a controlled substance, 7/17/14 Trial Tr. at 25. Thus, when the Court proceeded to further explain "[o]ne other point about the fourth element"—i.e., whether the defendants "agreed" to conduct the affairs of the Howard Boys' enterprise's pattern of racketeering—the Court was not bouncing back to an element it had inadvertently forgotten to conclude. Id. at 29. Instead, the Court was continuing its current discussion of that same element. Id.

Gills also takes issue with the Court's discussion of the interstate commerce element, which he asserts was "sparsely addressed." Def. Mot. at 6.[4] Gills argues that Court failed to "connect it

---

[4] Gills recites the entirety of the Court's instruction on this element, which is restated here:

Now let me talk to you about interstate commerce. Interstate commerce includes the movement of money, goods, services or persons from one state to another or

7

to the other four elements for the jury who had already been heavily inundated with complex legal jargon." Id.; see also Def. Reply at 4. Gills states that it was "difficult[] for the jury to understand the case," as evidenced by the Court's decision to provide the jury with the indictment. Def. Mot. at 6 (citing 7/18/14 Trial Tr. at 114) (Dkt. 880) (reflecting the Court's acknowledgement of the "complexity of the case")). Gills concludes that the "defective jury instruction . . . no doubt had to confuse the jury on all the elements" of the charged RICO conspiracy, and Simmington was deficient for failing to either object or to provide a curative explanation during his closing statement. Id. at 7.

Conversely, seeing no issues with these instructions, the Government notes that the Court took multiple steps to ensure that it properly communicated the instructions to the jury. Gov't Resp. at 19. These steps included instructing the jury orally, projecting significant instructions on a large screen in the courtroom, providing the jury with written copies of the instructions, and advising the jurors that they could send the undersigned a note if they did not understand anything in the instructions. Id. (citing 7/17/14 Trial Tr. at 17–18; Jury Instructions (Dkt. 953)).

The Court agrees with the Government that Gills has failed to identify any error in the jury instructions. The sections that Gills has identified as confusing represent a thorough and ordered

---

between another country and the United States. This would include the purchase or sale of goods or supplies from outside the state of Michigan, the use of mail or wire facilities or the causing of any of those things. If you find that beyond a reasonable doubt either that the Howard Boys enterprise made, purchased, sold or moved goods or services that had their origin or destination outside the state of Michigan or that the actions of the Howard Boys enterprise affected in any degree the movement of money, goods or services across state lines, then interstate commerce was engaged in or affected.

The government need only prove that the Howard Boys enterprise as a whole engaged in interstate commerce or that its activities affected interstate commerce to any degree although proof that racketeering acts did affect interstate commerce meets that requirement. The government need not prove that a defendant engaged in interstate commerce or that the acts of a defendant affected interstate commerce.

7/17/14 Trial Tr. at 30–31.

articulation of the elements of the charged offenses.  See 7/17/14 Trial Trans. at 22–30.  The fact that the Court provided the jury with the indictment does not indicate that the charges were so hopelessly confusing that the Court's instructions could not possibly convey their elements with clarity; instead, this fact further exemplifies the various steps the Court took to ensure that the jury understood what elements were necessary for conviction.  Gills identifies no inaccuracies and provides no support for his position other than his own purported confusion.

Because there was no error in the instructions, Gills's counsel was under no obligation to object to those instructions.  See Noble v. United States, No. 2:10-CR-51-JRG, 2018 WL 4441240, at *10 (E.D. Tenn. Sept. 17, 2018) ("A failure to object to instructions or to a verdict form that are not impermissible does not fall outside 'the wide range of professionally competent assistance' which the Sixth Amendment requires.") (quoting Strickland, 466 U.S. at 690).  Gills's second attempt to find constitutional fault with his trial counsel's performance fails.

### C.  Claim 3: Ineffective Assistance of Trial Counsel for Failure to Object to Introduction of Testimony Recorded in Prison

Gills was detained at Genesee County Jail between approximately September 2009 and April 2010 after being arrested for the state-law crime of carrying a concealed weapon.  Gov't Mot. at 7; Def. Resp. at 21.  Gills was represented by counsel at this time—specifically for the concealed weapon charge.  Def. Resp. at 21.  While Gills was incarcerated, the Government placed a recording device on Carvell Gordon—who later represented that he was a former member of the Howard Boys—and introduced Gordon to the cell block where Gills was housed.  Def. Mot. at 7; Gov't Resp. at 21.  Gordon secretly recorded certain conversations with Gills between November 14 and November 16, 2009.  Def. Mot. at 8; Gov't Resp. at 21.  Gordon testified at trial about these conversations.  See 7/8/14 Trial Tr. at 116–123 (Dkt. 873).  The Government introduced audio footage of these conversations as an exhibit, without objection from Simmington.  Id. at 123.  The Government also played portions of these conversations at trial.  Id.

9

Gills asserts that, because he was represented by counsel at the time that Carter recorded his conversations with Gills, the introduction of Carter's testimony and the audio footage violated Gills's right to counsel.  Def. Mot. at 9; see also Def. Reply at 5 (citing Massiah v. United States, 377 U.S. 201 (1964) (finding that use in evidence of defendant's incriminating statements made to cooperating co-defendant after defendant's indictment and retention of counsel violated defendant's Fifth and Sixth Amendment rights)).  Simmington was ineffective, argues Gills, for failing to object to the introduction of this evidence.  Mot. at 9.

As the Government correctly argues, the fact that Gills was represented by counsel for state-law charges does not invoke his Sixth Amendment right to counsel for federal charges.  See Gov't Resp. at 21–22 (citing Turner v. United States, 885 F.3d 949, 954 (6th Cir. 2018) (en banc); McNeil v. Wisconsin, 501 U.S. 171, 175 (1991)) (other citations omitted).  The Sixth Amendment right to counsel attaches when the prosecution commences—i.e., upon the initiation of "adversary judicial criminal proceedings."  Rothgery v. Gillespie Cnty., 554 U.S. 191, 198 (2008) (punctuation modified, citation omitted).  This right to counsel extends to certain pretrial "trial-like confrontations" that present "the same dangers that gave birth initially to the right itself." United States v. Ash, 413 U.S. 300, 311–312 (1973).  However, this "Sixth Amendment right to counsel is 'offense specific.'"  Turner, 885 F.3d at 954 (quoting McNeil, 501 U.S. at 175).  The commencement of the prosecution of a state crime does not trigger Sixth Amendment rights in a federal case because violations of state and federal law constitute "two separate offenses, even when the essential elements of the state and federal offenses are the same."  Id. at 954 (finding that indictment in state prosecution did not trigger criminal defendant's Sixth Amendment right to counsel for the purposes of forthcoming federal charges based on the same underlying conduct).  A defendant cannot prevail on an ineffective assistance of counsel claim based on the deprivation of his or her Sixth Amendment right to counsel before that Sixth Amendment right has attached;

"[t]here can be no constitutionally ineffective assistance of counsel where there is no Sixth Amendment right to counsel in the first place." Id. at 955.

Gills challenges the weight of this case law by referencing a case from this district where an arraignment and the appointment of an attorney for a state-law crime resulted in a Sixth Amendment right to counsel for a subsequent federal investigation into as-yet uncharged federal crimes. See Def. Reply at 6–7 (citing United States v. Bowlson, 240 F. Supp. 2d 678, 682 (E.D. Mich. 2003) ("[T]here is no question that a Sixth Amendment right to counsel attached to the fifth robbery because Defendant was formally arraigned on the charge and requested an attorney.")). Bowlson is distinguishable, however, because it represents the unique case "where the federal and the state authorities['] investigations were inexorably intertwined." 240 F. Supp. 2d at 684.[5] Conversely, in the case of Gills, the state-law crime for which Gills had representation—carrying a concealed weapon—was far removed and independent from the federal charges of which he was convicted. In Gills's words: "carrying a concealed weapon had nothing to do with conspiracy." Def. Add. to Mot. at 1.

Because the fact of Gills's representation for a state-law charge did not trigger his Sixth Amendment right to counsel for unrelated federal charges, see Turner, 885 F.3d at 954, his counsel was not ineffective for failing to challenge the introduction of Gordon's testimony and related evidence. Gills's third ineffective assistance of counsel claim also fails.

---

[5] Specifically, federal prosecutors asked the state to drop the state charges so that they could pursue federal charges, which the state did. Bowlson, 240 F. Supp. 2d at 684. Also, the federal prosecutor was part of a task force that consisted of both state and federal officials, and a state official remained "consistently involved" in the investigation even after the federal government took over the prosecution. Id.

The relevance of Bowlson is further weakened because its analysis relied heavily on Michigan v. Jackson, 475 U.S. 625, 636 (1986) ("[I]f police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid."), which was specifically overruled by Montejo v. Louisiana, 556 U.S. 778 (2009).

**D.  Claims 4 and 7: Sentence of Life Imprisonment in Violation of <u>Apprendi</u>**

Gills raises two arguments that his sentence of life imprisonment under 18 U.S.C. § 1963(a) violates the law established by <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000).  Def. Mot. at 10–11, 14–15.  Section 1963(a) states that an individual who commits a RICO violation "shall be fined under this title or imprisoned not more than 20 years (or <u>for life</u> if the violation is based on a <u>racketeering activity</u> for which the <u>maximum penalty includes life imprisonment</u>)."  18 U.S.C. § 1963(a) (emphasis added).  <u>Apprendi</u> held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490.

Gills first presents an ineffective assistance of counsel claim.  Gills notes that his appellate counsel argued before the Sixth Circuit that Gills's life sentence "was not supported by proof beyond a reasonable doubt that the offense was based on a racketeering activity for which the maximum penalty includes life imprisonment," as required by <u>Apprendi.</u>  Def. Mot. at 10.  In Gills's view, the Sixth Circuit neglected this argument in its decision affirming his conviction and addressed the <u>Apprendi</u> issue only as it applied to his co-defendant Alexandra Norwood.  <u>Id.</u> (citing <u>Gills</u>, 702 F. App'x at 384) (affirming Norwood's conviction over <u>Apprendi</u> argument because the jury's special verdict form reflected the jury's determination that Norwood's RICO violation was based on his having committed murder, which allows for the imposition of a life sentence).  Gills submits that—in contrast to Norwood—the jury did not find Gills guilty of a murder, and so his maximum allowable sentence under § 1963(a) was 20 years.  <u>Id.</u>  Gill further notes that he was never tried or convicted for murder in state court.  Def. Reply at 8.  Gills asserts that his counsel was deficient for failing to move for the Sixth Circuit to make a disposition on his <u>Apprendi</u> claim.  Def. Mot. at 11.  He asks that the Court either (i) re-open Gills's direct appeal so that the Sixth Circuit can rule on his <u>Apprendi</u> argument or (ii) make a ruling on this claim.  <u>Id.</u>

Gills's seventh claim further develops his argument that his sentence of life imprisonment on his RICO conviction amounted to an Apprendi violation. Id. at 14–15. In Gills's understanding, "the statutory penalty could have only been twenty years since the violation is based on racketeering activity for which the maximum of life could not be imported." Id. at 14. He argues that the jury—not the court—was required to determine Gills's responsibility for the RICO conspiracy. Id. (citing Apprendi, 530 U.S. 466; Alleyne v. United States, 570 U.S. 99 (2013)). He concludes: "[T]here was absolutely no indicted offense and moreover no jury finding on any overt act that would or could validate the district court's excessively inflated sentence of life," and so "the district court must re-sentence Petitioner Gills between zero to twenty years in accordance with 18 U.S.C. Section 1963(a)." Id. at 14–15.

As the Government correctly argues, see Gov't Resp. at 24–25, 34–36, Gills's Apprendi argument—whether or not framed as an ineffective assistance of counsel claim—fails for the same reason that Norwood's Apprendi argument failed. The RICO conspiracy charge alleged that Gills committed six attempted murders. Am. 1st Superseding Indictment at ¶¶ 38, 44, 68. Assault with intent to commit murder is punishable by life imprisonment. Mich. Comp. L. § 750.83. Thus, the RICO charged was "based on a racketeering activity for which the maximum penalty includes life imprisonment." 18 U.S.C. § 1963(a).

Gills is incorrect that the jury's special verdict form did not find Gills guilty of an offense that would subject him to a term of life imprisonment. The verdict form inquired whether, with respect to the RICO conspiracy charge, Gills committed an assault with the intent to murder multiple individuals. Verdict Form at 2–3 (Dkt. 712). The jury found in the affirmative. Id. In other words, as with Norwood: "The special verdict form asked the jury whether, '[w]ith respect to Count One'—the RICO conspiracy count—they found that [the defendant had committed a crime that was punishable by life imprisonment]. The jury checked yes. That satisfies Apprendi."

Gills, 702 F. App'x at 384.  Thus, Gills's life sentence was properly imposed, and there is no merit

to Gills's ineffective assistance of counsel claim or his independent Apprendi claim.

**E. Claims 5 and 6: Ineffective Assistance of Counsel for (i) Failure to Challenge Term of Imprisonment for Life under Miller and (ii) Failure to Demand Instruction on Ratification**

Gills argues that his term of life imprisonment violated the Eighth Amendment because a

court may not sentence a juvenile to life imprisonment without the possibility of parole eligibility.

Def. Mot. at 11 (citing Miller v. Alabama, 567 U.S. 460 (2012) ("[M]andatory life-without-parole

sentences for juveniles violate the Eighth Amendment.")).  Gills submits that the indictment

charged him with ten overt acts in furtherance of the RICO conspiracy before Gills reached his

eighteenth birthday.  Id. at 11–12.  Because he has been sentenced to imprisonment for life without

the possibility of parole for "criminal offenses that began as a juvenile and continued into his late

teenage years," Gills argues that he should be resentenced.  Id. at 13.  Gills further argues that the

Government was required to prove that Gills ratified his participation in the conspiracy after Gills

had turned eighteen because the conspiracy overlapped with his age of minority, and that his trial

counsel was ineffective for not objecting to the Court's failure to instruct on ratification.  Id. at

13–14.

Gills misstates the facts.  As the Government explains, see Gov't Resp. at 26–29, Gills was

convicted and sentenced to life for crimes he committed as an adult, not a juvenile.  Gills was born

in August 1989, and so he turned 18 in August 2007.[6]  Gills was indicted for (i) participating in a

racketeering conspiracy that ran from 2002 through at least the time of the original May 2012

indictment and (ii) attempting to murder multiple individuals in aid of that racketeering enterprise.

---

[6] The Government asserts that Gills was born in August 1989.  Gov't Resp. at 26 (citing Presentence Report).  Gills appears to contest this fact, arguing that he was 21 when indicted in May 2012—not 22, as follows from the birthdate provided by the Government.  See Def. Reply at 10–11.  However, Gills makes no averments regarding his birthday except to deny that he was 22 when indicted.  Given no alternative date, the Court understands that Gills was indeed born in August 1989.

Am. 1st Superseding Indictment.  Certain of these attempted murders were dated to March 17 and July 22, 2009—when Gills was 19.  Id. ¶¶ 44, 68.  Jury interrogatories reflected the jury's determination that Gills had committed these attempted murders.  Verdict Form at 2–3, 5, 8.  Thus, Miller is inapposite, and Gills was properly sentenced to life imprisonment for crimes he committed as an adult.

Further, because Gills was indicted at the age of 22, Gills is incorrect to suggest that he must have ratified his participation in the Howard Boys conspiracy after his eighteenth birthday to be convicted of RICO conspiracy.  The Sixth Circuit has explained that where a defendant "between the ages of eighteen and twenty-one [is] charged with participation in a conspiracy that spanned his eighteenth birthday[, . . .] the government must make a 'threshold showing' that the defendant 'ratified' his participation in the conspiracy after he turned eighteen . . . ."  United States v. Machen, 576 F. App'x 561, 562 (6th Cir. 2014) (quoting United States v. Maddox, 944 F.2d 1223, 1233 (6th Cir. 1991)).[7]  Under this standard, the ratification requirement "only exists when a defendant was between the ages of eighteen and twenty-one at the time of the indictment.  It does not apply to defendants indicted when older than twenty-one."  United States v. Gay, No. 14-20119, 2015 WL 3579880, at *2 (E.D. Mich. June 5, 2015).  Where a defendant "was indicted after his twenty-first birthday, the question of whether he ratified his participation in the conspiracy after his eighteenth birthday is irrelevant" because "the FJDA does not consider defendants indicted over the age of twenty-one to be 'juvenile[s].'"  Id. at *3.

Gills was indicted on May 3, 2012, when he was 22.  Indictment (Dkt. 3).  Gills was not a juvenile when indicted, and so the jury was not required to find that he ratified his participation in the conspiracy after turning 18.  Gay, 2015 WL 3579880, at *3.  Thus, there was no error in the

---

[7] This requirement derives from the Federal Juvenile Delinquency Act (FJDA), "which provides that the government may not proceed against juvenile offenders in federal court unless it certifies that certain conditions are met."  Machen, 576 F. App'x at 564.

jury instructions, and no obligation for Gills's counsel to object.  See Noble, 2018 WL 4441240,

at *10.  Gills's claims for ineffective assistance of counsel on these points have no merit.

### F.  Claim 8: Ineffective Assistance of Counsel for Failure to Call Exculpatory Witness

Gills argues that his trial counsel was ineffective for failing to call Shawn Gardner as an

exculpatory witness in connection with the Charles Orr shooting.  Def. Mot. at 15–16.  Gills states

that he told his counsel "that he must interview and call Shawn Gardner as a witness in regard to

the Charles Orr shooting," submitting that "Gardner would vindicate him of any liability since

Petitioner tried to prevent the spontaneous shooting incident."  Id. at 15.  Simmington interviewed

Gardner, who supported Gills's position that Gills had no advance warning that Gardner was armed

or was intending to shoot Orr.  Id. (citing Gardner Aff.).[8]  Gardner never testified at trial, and it is

Gills's opinion that, "[h]ad counsel called Gardner to testify[,] there is a strong probability that the

jury would have acquitted Petitioner on the Charles Orr shooting," resulting in a lower sentence

for Gills.  Id. at 16.

Gills has failed to undermine the presumption that Simmington's decision not to call

Gardner to the stand was a strategic call within the range of his discretion.  See Rayborn v. United

States, 489 F. App'x 871, 878 (6th Cir. 2012) ("[W]hether to call a witness and how to conduct a

witness' testimony are classic questions of trial strategy that merit Strickland deference.").

Because Simmington interviewed Gardner, counsel's decision not to offer Gardner's testimony

was presumptively permissible and not unconstitutionally deficient.  See Cathron v. Jones, 77 F.

App'x 835, 841–842 (6th Cir. 2003) (Courts "presume that counsel's decision to omit [witnesses']

testimony was sound trial strategy" where counsel—rather than fail "to either investigate or

interview" those witnesses—develop knowledge regarding the subject matter on which "each

would testify and how credible each was as a witness.").

---

[8] Gardner's affidavit is provided in the same filing as Gills's motion.  See Mot. at PageID.12801–12802.

Further, a review of the issues likely posed by Gardner's testimony reinforces the reasonableness of counsel's decision not to subject Gardner to cross-examination. The Government submits that Gardner had "a reason to lie for Gills," as he and Gills are related and apparently personally close; for example, Gills has a tattoo of Gardner's nickname ("Free Dude"). Gov't Resp. at 30. Gardner "has little, if anything, to lose by claiming he would have testified on Gills's behalf," given that he is now serving a sentence of 30 to 60 years in the Michigan Department of Corrections for an unrelated second-degree murder conviction. Id. at 31. Additionally, the trial record reflected that Gardner was a member of the Howard Boys gang and that Gardner's testimony likely would have implicated Gills in the charged RICO conspiracy. See, e.g., 6/16/14 Trial Tr. at 97 (Dkt. 856) (revealing that Gardner was a member of the Howard Boys and was tattooed with the Howard Boy moniker "Hot Boy" in flames); id. at 55 (representing that Gardner and Gills discussed "recruiting" new members of the Howard Boys to the "frontline"); id. at 163 (reflecting that Gardner and Gills discussed the allocation of Howard Boy drug turf). Thus, Gardner's testimony not only had significant credibility issues, but also was likely to harm Gills's defense.

A court's "review of counsel's strategy and trial tactics should be 'highly deferential' and should avoid second-guessing." Bentley v. Motley, 248 F. App'x 713, 718 (6th Cir. 2007) (quoting Strickland, 466 U.S. at 689). Gills has provided no reason to second-guess trial counsel's sound decision not to risk weakening Gills's defense by placing his non-credible co-conspirator to the stand. There is no meritorious ineffective assistance of counsel claim here.

### G. Claim 9: Ineffective Assistance of Counsel for Advice Regarding and Negotiation of Plea Agreement

Gills states that the Government made multiple plea offers in advance of his trial, but—in part due to Gills's avowed refusal to cooperate—no deal came to fruition. Def. Mot. at 17. The last offer was for 24 years without cooperation. Id. Gills recalls that his trial counsel advised that

the "worst case scenario" in the event of a conviction was that Gills "could only be sentenced with a maximum of 30 years," which factored into Gills's refusal to take the deal. Id. Gills was ultimately sentenced to life imprisonment for his RICO conviction, with other sentences to run concurrently. Judgment at 3. Gills now alleges that his counsel was ineffective because he (i) "failed to further negotiate a better plea offer" and (ii) "failed to properly advise [Gills] about the maximum sentence exposure." Id.

"[W]here a petitioner alleges ineffective assistance of counsel prevented plea negotiations, demonstrating prejudice requires that he establish a reasonable probability that but for counsel's errors, the petitioner would have received a plea offer." Byrd v. Skipper, 940 F.3d 248, 257 (6th Cir. 2019). Further, the petitioner "must also show that he would have accepted the offer, the prosecution would not have rescinded the offer, and that the trial court would not have rejected the plea agreement." Id. Gills cannot meet this standard.

Gills is unable to establish that his counsel's failure to negotiate an acceptable deal prejudiced him where he instructed his counsel to "push for 15 to 20 years" while maintaining his position that "he would never cooperate with the government." Def. Mot. at 17. The Government expresses that a deal in this range was never realistic, noting that "Gills shot at and tried to kill several people, refused to cooperate with the government and threatened government witnesses." Gov't Resp. at 33. Because he cannot show that the Government would have offered a plea deal that he would have accepted if his counsel had acted differently, Gills's claim on this point fails to demonstrate ineffective assistance of counsel. Byrd, 940 F.3d at 257.

Gills's argument that he was insufficiently informed regarding his potential sentencing exposure if convicted fares no better. Gills signed acknowledgments stating that he had "read" and "underst[oo]d" both his indictment and his superseding indictment. See Def. Acknowledgment of Indictment (Dkt. 118); Def. Acknowledgment of Superseding Indictment (Dkt. 164). These one-page acknowledgments concisely and clearly state the maximum sentences

18

Gills might receive for each count if he were "convicted or plead guilty," including "[i]mprisonment for a maximum of life" for the RICO charge. Def. Acknowledgment of Indictment; Def. Acknowledgment of Superseding Indictment. Gills was charged with the same RICO conspiracy charge in the final amended first superseding indictment. See Am. 1st Superseding Indictment at 7. Gills thus explicitly recognized that a worst-case scenario would result in a life sentence on his RICO count, dooming his argument that he was unaware of this possibility due to his counsel's incompetence.

Further, Gills does not specifically allege that he would have accepted the Government's plea offer if he had understood the potential for life imprisonment, see Def. Mot. at 17; Def. Reply at 13; Def. Suppl. to Reply at 2—and there is little reason to suspect that he would have, considering Gills's avowed refusal to cooperate and his insistence on playing by his own rules in advance of trial, see 5/18/15 Order at 4–6 (Dkt. 793) (observing that Gills had threatened multiple witnesses and dissuaded at least one Government cooperator from testifying). Without showing that he would have accepted the plea, Gills cannot show prejudice. Byrd, 940 F.3d at 257. Gills has provided no basis for finding that his counsel's errors are to blame for the absence of a better plea deal or for Gills's decision not to take the deal on the table. The responsibility for the length of Gills's sentence remains with the man who committed the crimes. There is no ineffective assistance of counsel on this point.

### H. Claim 10: Unconstitutionality of 18 U.S.C. § 924(c)

Gills argues that his conviction under § 924(c)—for using or carrying a firearm and in relation to a "crime of violence"—must be vacated because § 924(c) has been rendered unconstitutional. Def. Resp. at 16–17 (citing United States v. Davis, 139 S. Ct. 2319 (2019)).

As the Government explains, however, Davis does not stand for the proposition that all convictions under § 924(c) must be vacated. See Gov't Resp. at 36–38. Davis found that one definition of "crime of violence" was unconstitutionally vague: § 924(c)(3)(B), known as the

"residual clause," which defines a "crime of violence" as a federal felony offense that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  139 S. Ct. at 2336.  But <u>Davis</u> left untouched § 924(c)(3)(A)—the "elements clause"—which defines a "crime of violence" as a federal felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another."  <u>See</u> <u>United States v. Richardson</u>, 948 F.3d 733, 741 (6th Cir. 2020) ("<u>Davis</u> does not gut the entire statute.  To the contrary, <u>Davis</u> leaves intact a separate definition of crime of violence supplied by the statute's 'elements clause.'").

The "crime of violence" during which Gills used or carried a firearm was attempted murder, which has attempted use of force as an element.  <u>See</u> Mich. Comp. L. § 750.83; Jury Instructions at 53.  Gills argues that attempted murder is not a crime of violence, Def. Reply at 15, but § 924(c)(3)(A) clearly includes "attempt" crimes.  Thus, Gills was properly convicted for using or carrying a firearm during a crime of violence.  <u>See</u> <u>Rosenquist v. United States</u>, No. 16-20470, 2022 WL 71780, at *3 (E.D. Mich. Jan. 6, 2022) (denying § 2255 motion to vacate and upholding § 924(c) conviction under "elements" clause over defendant's argument based in <u>Davis</u>).

## I.  Request for Evidentiary Hearing

Gills requests an evidentiary hearing.  <u>See, e.g.</u>, Def. Reply at 13.  "An evidentiary hearing is required unless the record conclusively shows that the petitioner is entitled to no relief.  Thus, no hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."  <u>Arredondo v. United States</u>, 178 F.3d 778, 782 (6th Cir. 1999) (punctuation modified, citations omitted).  The records shows conclusively that Gills is not entitled to relief, and, therefore, the Court denies his request for an evidentiary hearing.

### III. CONCLUSION

For the reasons explained above, the Court denies Gills's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (Dkt. 979).

SO ORDERED.

Dated:  August 3, 2022                          s/Mark A. Goldsmith
          Detroit, Michigan                     MARK A. GOLDSMITH
                                                United States District Judge