UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.

                                     Case No. 12-CR-20287
                                     HON. MARK A. GOLDSMITH

LEON GILLS,

      Defendant.

_____/

## OPINION & ORDER (i) DENYING DEFENDANT'S MOTION FOR RETROACTIVE APPLICATION OF SENTENCING GUIDELINES (Dkt. 1202), (ii) DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE (Dkts. 1242, 1246), AND (iii) DENYING DEFENDANT'S MOTION FOR SANCTIONS (Dkt. 1258)

On May 29, 2015, Defendant Leon Gills was sentenced to life imprisonment on his conviction under count one, for racketeering conspiracy under 18 U.S.C. §§ 1962(d), 1963; 120 months on his conviction under counts 8 and 35, both for attempted murder in aid of racketeering under 18 U.S.C. §§1959(a)(5) with counts 1, 8, and 35 to run concurrent; 120 months under count 9, for use and discharge of a firearm during an in relation to a crime of violence under 18 U.S.C. §§924(c), 924(c)(1)(A)(iii).  Judgment (Dkt. 801).

Before the Court are: (i) Gills's motion for retroactive application of sentencing guidelines (Dkt. 1202) (ii) Gills's motion (and a supplemental motion) for compassionate release (Dkts. 1242, 1246), and (iii) Gills's motion for sanctions (Dkt. 1258).  Having considered all briefing and record materials submitted by the parties, the Court: (i) denies Gills's motion for retroactive application of

sentencing guidelines; (ii) denies Gills's motion and supplemental motion for compassionate release;

and (iii) denies Gills's motion for sanctions.[1]

## I.    BACKGROUND

The Court refers to and incorporates the background section of its August 3, 2022 Order

denying Gills's motion to vacate his sentence.

> Based on his often violent involvement with a gang that sold illegal substances, Gills
> was charged with (i) conspiracy to violate the Racketeering Influenced and Corrupt
> Organization Act, 18 U.S.C. § 1962 (RICO); two counts of attempted murder in aid
> of racketeering, 18 U.S.C. § 1959(a); and two counts of use and discharge of a firearm
> during and in relation to a crime of violence, 18 U.S.C. 924(c). Am. 1st Superseding
> Indictment (Dkt. 191).
>
> In a jury trial presided over by the undersigned, testimony reflected that Gills was a
> member of a gang based in the Howard Estates, a public housing project on the south
> side of Flint, Michigan. See, e.g., 6/11/14 Trial Tr. at 31–40, 64–66 (Dkt. 853). The
> gang went by various names, including the "Howard Boys" and "Murda Ville." 6/3/14
> Trial Tr. at 145 (Dkt. 849). This gang controlled the drug trade in and around the
> Howard Estates, and Gills sold substances including crack cocaine. 6/11/14 Trial Tr.
> at 126–129.
>
> Testimony demonstrated that Gills had been actively involved in multiple shootings.
> See 6/6/14 Trial Tr. at 55–57 (Dkt. 850) (reflecting that Gills had opened fire at a rival
> gang-member driving away in a car, who was shot but survived); 6/26/14 Trial Tr at
> 127–128 (Dkt. 864) (reflecting that Gills fired shots into a van of individuals
> associated with a former gang member with whom Gills had a personal conflict);
> 7/2/14 Trial Tr. at 40 (Dkt. 870) (reflecting that Gills directed two other gang members
> to "[l]ay law down" on a crack dealer, whom the gang members subsequently shot

---

[1] Because oral argument will not aid the Court's decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2).

In addition to Gills's pro se motion for retroactive application of sentencing guidelines (Dkt. 1202), the Court considers the probation department's sealed memorandum (Dkt. 1213 (sealed)), the Government's response brief (Dkt. 1222) the Government's supplemental response brief (Dkt. 1223) and Gills's counselled supplemental brief (Dkt. 1232).

In addition to Gills's motion for compassionate release (Dkt. 1242), the Court considers his supplemental motion (Dkt. 1246), the Government's response (Dkt. 1247) Gills's letter in support of his motion (Dkt. 1255) and his reply in support of his motion (Dkt. 1257). The Government also filed a notice of supplemental authority (Dkt. 1259).

The Government did not respond to Gills's motion for sanctions.

and killed); id. at 90–92 (reflecting that Gills was driving while his co-conspirator shot and hit a former gang-member). Additionally, while incarcerated, Gills threatened multiple Government cooperators and members of their families to intimidate them into refusing to testify. See, e.g., 7/9/22 Trial Tr. at 169, 172–177 (Dkt. 874).

The jury returned guilty verdicts against Gills for all counts charged, except that they acquitted Gills of one count of use of a firearm during a crime of violence.  Verdict (Dkt. 712).  The Court sentenced Gills to life imprisonment on the RICO conspiracy count, 120 months on the two counts of attempted murder in aid of racketeering, and 120 months on the use of a firearm during a crime of violence, which was imposed consecutively to all other counts.  Judgment (Dkt. 801).  Gills appealed, and the United States Court of Appeals for the Sixth Circuit affirmed.  United States v. Gills, 702 F. App'x 367, 385 (6th Cir. 2017), as amended (Nov. 6, 2017).

United States v. Gills, No. 12-cr-20287, 2022 WL 3084470, at *1 (E.D. Mich. Aug. 3, 2022).

## II.    ANALYSIS

### A.  Retroactive Application of Sentencing Guidelines

Gills's first-filed motion is for a reduction of sentence under 18 U.S.C. § 3582(c)(2) .  He argues that he is entitled to a reduction or modification of his sentence "[a]s a result of the United States Sentencing Commission's Amendment 821 (allowing for a reduction relating to criminal history 'status points')."  Mot. for Modification at PageID.15870.  He argues that under Amendment 821, the Court should subtract the "extra two points" for "committing the instant offense while on probation, which would take him "out of category V and . . . [place him] in category IV" for his sentencing guideline range.  Id. at PageID.15872.

"A § 3582(c)(2) proceeding involves a two-step process for determining whether to reduce a defendant's sentence based on a retroactive guidelines amendment."  United States v. Hanson, 124 F.4th 1013, 1016 (6th Cir. 2025).  "First, the district court must determine whether a defendant is eligible for a sentence modification under U.S.S.G. § 1B1.10. . . . Second, if the defendant is eligible, the court may then consider whether a reduction is warranted based on the sentencing factors listed in 18 U.S.C. § 3553(a). Id.

3

Gills, as the Government concedes, is eligible for relief based on Part A of Amendment 821 of the sentencing guidelines.  The amended provision states:

> Add 1 point if the defendant (1) receives 7 or more points under subsections (a) through (d), and (2) committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.

Section 4A1.1(e).  Under the amendment, Gills would receive one status point instead of two for a total of 9 criminal history points (reduced from the 10 criminal history points he received at sentencing).  See Probation Report at PageID.16025–16027 (SEALED); see also Gov't Resp. at PageID.16050–16051.  This reduces Gills's criminal history category to IV and his advisory guideline range to 324 to 405 months.  See Probation Report at PageID.16025–16027 (SEALED); see also Gov't Resp. at PageID.16050–16051.  Accordingly, Gills is eligible for a sentence reduction under the first prong of the § 3582(c)(2) analysis.

However, Gills's motion fails at the second prong of the § 3582(c)(2) analysis.  The Court, in its discretion, finds that a reduction is not warranted based on the sentencing factors listed in 18 U.S.C. § 3553(a).  These factors include the nature and circumstances of a defendant's offenses, the seriousness of the offenses, the need to promote respect for the law, and the need to protect the public from further crimes by the defendant.

The Court has analyzed the § 3553(a) factors as they relate to Gills, most recently in December 2021.  See, e.g., United States v. Gills, No. 12-20287, 2021 WL 6112153, at *1 (E.D. Mich. Dec. 27, 2021), aff'd, No. 22-1065, 2022 WL 18542500 (6th Cir. Oct. 13, 2022).  Gills does not present any new or different arguments for the Court to evaluate these factors differently than it has already.  The Court's reasoning in finding that these factors weigh against granting Gills relief remains unchanged.  Id.  The § 3553(a) factors weigh strongly against granting Gills's motion and the motion is denied.

### B. Compassionate Release

Gills's second-filed motion is one for compassionate release.  The Court denied Gills's first such motion on December 27, 2021.  Order Denying Mot. Compassionate Release (Dkt. 1132).  Gills appealed that Order (Dkt. 1143), and the Sixth Circuit affirmed this Court's denial in an unpublished decision (Dkt. 1178).  See Gills, 2022 WL 18542500.

The First Step Act modified the statute concerning the compassionate release of federal prisoners, 18 U.S.C. § 3582(c), such that district courts may entertain motions filed by incarcerated defendants seeking to reduce their sentences.  United States v. Ruffin, 978 F.3d 1000, 1003–1004 (6th Cir. 2020).  Before granting a compassionate release motion, a district court must engage in a three-step inquiry: (i) the court must find that "extraordinary and compelling reasons warrant [a sentence] reduction"; (ii) it must ensure "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (iii) it must "consider[] all relevant sentencing factors listed in 18 U.S.C. § 3553(a)."  United States v. Jones, 980 F.3d 1098, 1101 (6th Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)).  If all of those requirements are met, the district court "may reduce the term of imprisonment," but it need not do so.  18 U.S.C. § 3582(c)(1)(A).

Before the Court considers whether extraordinary and compelling circumstances warrant reducing Gills's sentence, or whether the § 3553(a) factors support a sentence reduction, it must first address whether Gills has exhausted his administrative remedies before bringing this motion.

### 1. Exhaustion of Administrative Remedies

Before an inmate moves for compassionate release under § 3582(c)(1), the inmate must either exhaust his or her administrative remedies with the United States Bureau of Prisons (BOP) or wait 30 days from when the inmate filed a request with his or her warden.  18 U.S.C. §

3582(c)(1)(A); United States v. Alam, 960 F.3d 831, 832 (6th Cir. 2020). The Government argues that Gills failed to exhaust his administrative remedies. It states:

> Gills did not provide proof that he requested a reduction in sentence from the Bureau of Prisons (BOP) nor did he provide proof that he appealed said decision through the Administrative Remedy Process. The most recent request BOP has on record is from 2020 and their records indicate that he does not have any administrative remedies pending[.]

Resp. at PageID.16321. The Government attached Gills's administrative remedy records showing that his most recent request for reduction was in 2020. See Admin. Record at PageID.16343–16347 (Dkts. 1247-2, 1247-3). On this basis alone, the Court denies Gills's motion.

Even if Gills had exhausted, however, the Court still denies his motion because he fails to set forth extraordinary and compelling circumstances that would warrant a reduction of his sentence and he fails to demonstrate that the § 3553(a) factors support a sentence reduction for the reasons explained below.

### 2. Extraordinary and Compelling Circumstances

Gills's motion argues that the following extraordinary and compelling reasons warrant his release: "(i) medical circumstances and inadequate medical care, (ii) victim of physical and mental abuse, (iii) unusually long sentence, and (iv) youthfulness, as well as (v) other reasons." Mot. for Compassionate Release at PageID.16260.

### (i) Health and Medical Arguments

As to Gills's "medical circumstances" arguments, he states that as a child he was diagnosed with certain "mental, physical, and emotional disorders" including: "(i) attention deficit and hyperactivity disorder (ADHD), (ii) oppositional defiant disorder, (iii) cannabis and alcohol dependence (a genetic predisposition), (iv) bi-polar [sic] disorder, (v) dyslexia reading, (vi) keratoconus (eye disease), (vii) mild retardation, (viii) feelings of abandonment leading to aggression and provoking, (ix) depression, etc." Id. at PageID.16261. He discusses his upbringing by his mother,

who was addicted to drugs and alcohol and his childhood living in low-income housing projects.  He states that "the Government withheld" this information during the trial.  Id. at PageID.16262–16263.  He argues that his "history of mental and emotional disorders would have undermined the Government's case against Gills, or altered the selection of penalty."  Id. at PageID.16264.

As Gills notes more than once in his motion, his relevant medical diagnoses were known when he was "a child and confirmed by the presentence investigation report."  Id. at PageID.16261, 16265.  In other words, his background, including any relevant psychological or medical diagnoses, were facts known at the time of Gills's sentencing.  The Sixth Circuit has explained, "§ 3582(c)(1)(A)'s text and structure, together with its narrow scope, show that identifying extraordinary and compelling reasons is a task that focuses on post-sentencing factual developments."  United States v. Hunter, 12 F.4th 555, 569 (6th Cir. 2021) (punctuation modified)  Because Gills's pre-sentencing medical diagnoses are not post-sentencing factual developments, the Court rejects Gills's argument that his medical diagnoses provide extraordinary and compelling reasons for his release.

Next, Gills argues that "inadequate medical care" provides extraordinary and compelling reasons for his release.  Mot. for Compassionate Release at PageID.16267–16269.  He argues that he has certain "functional cognitive and emotional impairments" which he does not identify, but which he states, "require[] long term specialized care that Mr. Gills is not receiving at this time."  Id. at PageID.16268.  He then quotes from the Code of Federal Regulations relating to the Americans with Disabilities Act regarding the meaning of "disability" and "major life activities," and makes a generalized argument that his "mental, physical, and emotional diseases are permanent and inseparable and require long-term professional care since birth[.]"  Id.  Gills states that he sent a "letter (complaint) to the Office of the President of the United States" about his medical care.  Id. at PageID.16269.

Gills fails to provide any evidence that the BOP is unable to provide adequate care for his medical conditions, much less, what his "permanent and inseparable" conditions that require long-term care are.  When a prisoner fails to provide medical records demonstrating that he requested and was denied necessary care, that prisoner generally has failed to show extraordinary and compelling reasons for release.  See United States v. Smith, No. 21-cr-47, 2024 WL 3656187, at *5 (W.D. Ky. Aug. 5, 2024) (citing cases); United States v. Sexton, No. 19-cr-192, 2021 WL 128952, at *3 (S.D. Ohio Jan. 14, 2021) (collecting cases).

Not only has Gills failed to provide any relevant medical records, he has failed to identify, beyond conclusory argument, any mental, physical, and emotional diseases that are improperly cared for by the BOP.  The Court rejects Gills's argument that his impairments present an extraordinary and compelling reason to justify his release.[2]

### (ii)  Physical Abuse

Gills argues that he has set forth extraordinary and compelling circumstances to warrant his release and/or a reduction in sentence because of "physical abuse by BOP staff."  Mot. Compassionate Release at PageID.16269.  He gives the following as examples of BOP's alleged abuse: (i) being served "cold bologa [sic] 3 times a day" when on lockdown; (ii) being fed leftovers every day for at least one meal per day, sometimes twice per day; (iii) "food is always cold and contaminated with unclean bacteria, etc.;" (iv) collective punishment, such that "if one inmate break [sic] a rule such as getting caught with a knife or drugs then the whole unit is punished by locking the unit down for extended periods and delaying commissary and turning the TVs off, etc.;" (v) "there are no jobs

---

[2] Moreover, as the Government notes, Gills's arguments that his cognitive impairments substantially diminish his ability to either provide self-care, for the BOP to provide care for him, or for him to recover is undermined by the fact that his prison records suggest that he has not only cared for himself in prison but has also completed classes and programming, all of which are positive developments. See Gills's sealed BOP medical and psychological records at PageID.16353–16437.

outside of the 9 or 10 jobs already taken;" (vi) "transgender people are given preferential treatment for job, programing and psychology services;" (vii) "officers are still physically beating inmates;" (viii) "there is no leisure library," and "no one brings a book cart around during the frequent lock-downs;" (ix) "there is nothing to do;" (x) there are "virtually no programs nor classes and when something is offered, you learn after signing up that the class is either cancelled or filled;" (xi) retaliation is the norm by staff against inmates and sexual assaults are rarely challenged."  Id. at PageID.16270.  None of these arguments is persuasive.

While Gills is correct that Federal Sentencing Guideline § 1B1.13 includes a category under "extraordinary and compelling reasons" for defendants who are victims of physical abuse while in custody, none of Gills's complaints here rises to the level of "serious bodily injury," as is required under the guideline.  See U.S.S.G. § 1B1.13(b)(4)(B).  "Serious bodily injury is defined in the guideline as "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation."  U.S.S.G. § 1B1.1

Here, the only category of Gills's complaints that could potentially rise to that level is his allegation of officers beating inmates.  But Gills fails to provide any detail or supporting facts, whatsoever, regarding this allegation.  Nor does he argue that he was the victim of  an alleged beating.  These generic and conclusory arguments do not rise to the level of severity required by § 1B1.13.

The Court agrees with the Government that Gills has not made any showing as to the other portion of the guideline, which requires that "the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative

proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger. U.S.S.G. § 1B1.13(b)(4).

In sum, the Court rejects Gills's argument that "physical abuse" is an extraordinary or compelling reason to reduce his sentence.

### (iii)     Unusually Long Sentence

Gills argues that an extraordinary and compelling reason for reducing his sentence is that his sentence is "unusually long for a mentally defective person."  Mot. for Compassionate Release at PageID.16271.  U.S.S.G. § 1B1.13(b)(6) states that an unusually long sentence can potentially be an extraordinary and compelling reason for reducing a sentence. It states:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

Gills argues that he was unable to "consult with his attorney with a reasonable degree of rational understanding." Id.  He then provides arguments that he "may have formulated," which are not a model of clarity.  Id. at PageID.16271–16274.  As best the Court can understand, he reiterates many of the arguments related to his "mental and physical disorders" that the Court already rejected, but now adds that he believes his attorney's statements "negatively affected" his defense.  Id.  The Court rejects this argument because it is not fully developed or comprehensible.  To the extent the Court can understand Gills's arguments, they are reiterations of arguments the Court rejected already.

### (iv)     Rehabilitation

Gills argues that his rehabilitation with a combination of other circumstances presents an extraordinary and compelling reason for a sentence reduction.  Mot. for Compassionate Release at

PageID.16275.  He notes that he has sought release on this basis in the past, and that his latest efforts, combined with these past efforts, present extraordinary and compelling reasons to reduce his sentence.[3]  Id. at PageID.16274–16275.

In its response, the Government notes that, while Gills has made some efforts at rehabilitation, they are not extraordinary and compelling on their own, particularly because he has accumulated nine disciplinary infractions while incarcerated.  See BOP Inmate Discipline Data at PageID.16348–16350.  The Court need not decide whether Gills's efforts at rehabilitation have been successful, however, because "Congress was emphatically clear that [r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."  Hunter, 12 F.4th at 572.

This argument is rejected.

### (v)    Other Reasons

Gills argues that there are four "other" reasons demonstrating extraordinary and compelling reasons for his release.  They are (i) "age at the time of the offense or prior offenses," Mot. for Compassionate Release at PageID.16275–16278; (ii) "no federal jurisdiction," id. at PageID.16278–16280; and (iii) "defective verdict form," id. at PageID.16280–16282; and (iv) ineffective assistance of counsel, id. at PageID.16282–16283.  None of these arguments is persuasive.

Gills's age-based argument is misplaced.  The Sentencing Commission's relevant policy statement regarding age may apply when the defendant is "at least 65 years old," "experiencing a serious deterioration in physical or mental health because of the aging process," and has "served

---

[3] Gills has previously argued that his post-conviction efforts should warrant his release, and, while the Court finds his arguments regarding continued efforts encouraging, they again do not show extraordinary and compelling reasons for his release for the same reasons that the Court explained previously.  See Gills, 2021 WL 6112153, at *4.

at least 10 years or 75 percent of [his] term of imprisonment, whichever is less."  U.S.S.G. § 1B1.13, cmt. N.1(B).  Gills makes no such showing here.  Instead, Gills essentially reiterates the age-based arguments he made, which the Court rejected and the Sixth Circuit affirmed, in his previous motion for compassionate release.  The Court rejects his arguments again here on the same basis.  See Gills, 2021 WL 6112153, at *4.

Gills's next three "other reasons" are reiterations of arguments that he already made, and were rejected, in both his direct appeal, United States v. Gills, 702 F. App'x 367 (6th Cir. 2017), as amended (Nov. 6, 2017), and in his motion to vacate his sentence, United States v. Gills, No. 12-CR-20287, 2022 WL 3084470, at *4 (E.D. Mich. Aug. 3, 2022).  Gills presents no new arguments or reasons for the Court to decide these issues differently here.[4]

Accordingly, the Court denies Gills's motion to reduce his sentence because (i) he did not exhaust his administrative remedies; and (ii) he has not shown extraordinary or compelling reasons for his release.

### C.  Motion for Sanctions

Gills's third-filed motion is for sanctions against Assistant United States Attorney Craig F. Wininger.  Mot. for Sanctions (Dkt. 1258).  He argues, in sum, that Wininger hid certain information from the Court at the time of sentencing, which would have benefitted Gills, and that Wininger mislead the Court regarding Gills's failure to exhaust his administrative remedies.  Id. Gills seeks $500 million dollars and other relief.  Id.  Gills argues that the Court should grant sanctions in its inherent power, citing 28 U.S.C. § 1927.

---

[4] Even if Gills had shown an extraordinary and compelling reason to reduce his sentence, a sentence reduction would still be unwarranted based on the § 3553(a) factors for the reasons explained in this order relating to Gills's motion for reduction of sentence under Amendment 821.

Gills's motion is baseless. There is no evidence, whatsoever, that Wininger acted in bad faith. Instead, all Gills points to are arguments made by the Government in this case with which Gills disagrees. This does not rise to the level of sanctions.

Moreover, the Sixth Circuit has explained that: "Our circuit hasn't yet decided whether lower federal courts have the inherent power to sanction attorneys in criminal cases." United States v. Petlechkov, 72 F.4th 699, 710 (6th Cir. 2023). For these reasons, Gills's motion for sanctions is denied.

### III.   CONCLUSION

For the reasons stated above, Gills's motion for retroactive application of sentencing guidelines (Dkt. 1202), motion for compassionate release (Dkt. 1242) and supplement (Dkt. 1246) are denied. Gills's motion for sanctions (Dkt. 1258) is denied.

**SO ORDERED.**

Dated: April 15, 2026                    s/Mark A. Goldsmith
Detroit, Michigan                        MARK A. GOLDSMITH
                                         United States District Judge


### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 15, 2026.

                                         s/Joseph Heacox
                                         JOSEPH HEACOX
                                         Case Manager